## Case No. 9,078.

### The MARIA JOSEPHA.

[Brunner, Col. Cas. 500; [1] 2 Wheeler, Cr. Cas. 600.]

Circuit Court, D. South Carolina. May, 1819.

INTERNATIONAL LAW — DUTIES OF NEUTRAL POWERS—NEUTRALITY.

The law of nations requires that strict neutrality should be observed between belligerents by other powers.

In admiralty.

JOHNSON, Circuit Justice. Questions of salvage are always questions of the most disagreeable kind. In vain the mind looks for relief in its anxiety to do justice by seeking the aid of fixed rules and principles. Such questions are addressed exclusively to discretion, and that discretion must move in a range to which there are no defined limits. This is attended with another embarrassing circumstance. It is impossible to separate the question of salvage from that which must finally dispose of the residue of this vessel and cargo. The same rule cannot be applied indifferently to both parties claimants. If the residue ought to be restored to the Spanish claimants, then no salvage can be demanded; if the treaty applies to the case, or if it does not apply, then much higher salvage ought to be paid than if it be adjudged to the captor. The principal question in the case, then, is forced upon me before I can dispose of that salvage; and here I cannot hesitate on the decision that must be made. The law of nations requires of the United States the observation of strict neutrality be-

---

[1] [Reported by Samuel Blatchford, Esq.]

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

tween the belligerents. Flagrante bello, no neutral nation is bound to pursue a course of conduct that may ultimately embroil it with the victor. We found the property in possession of one of the belligerents, and we are bound to leave it there. It is enough for us that we see a state of open war existing between two powers who are able to maintain it. The question of right is with the god of armies. This is no recognition of the independence of Buenos Ayres; it is the recognition of a fact known to all the world, and admitted by the claimant himself; that of a state of open war between Spain and one of her colonies. This is a most solemn and notorious fact by which nations can exhibit their independence to the rest of the world; and whilst the struggle continues other nations are not at liberty to distinguish between fact and right. Under these impressions I award one fifth of the net proceeds to the libelant; convinced that, had the captors been consulted at the time the vessel was taken charge of, they would have freely given that proportion to secure the rest; and that the libelants ought to be satisfied with eight thousand dollars for the service rendered.

There is another point on which I feel myself called on to make a remark; that is, the effect of the treaty between Spain and the United States. The sixth article has no bearing on the case. The object of that article is the protection of the vessels or effects of Spanish subjects from seizure, at the time of their being within our jurisdiction. Nor does the case come under the ninth article, since, in whatever light Spain may think proper to consider the cruisers of her enemy, they are not pirates in the view of other nations; and as to the second section of the fourteenth article, it makes no provision for the restitution of property captured by citizens who have accepted commissions to cruise against Spain. The provisions are, that no citizen shall accept such a commission, and that he who accepts such a commission shall be punished as a pirate. In a government of laws, everything has been done which good faith required to be done. Laws have been passed, and our courts are open for the punishment of such as accept of commissions under the enemy of Spain. But information must be lodged and evidence produced, before it can be required of the courts of justice to punish those offenders. For anything further Spain must depend upon the vigilance, activity, and intelligence of her agents; and in no case is it, or can it be made, an addition to the punishment of such offenders, that the property shall be restored, unless the United States may be made liable for indemnity; for when the capture is made, the property is vested in the government that grants the commission. It is the seizure of the state, and not of the individuals. In the case before us, there is no evidence that the San Martin privateer was fitted out in the United States. She has, indeed, very improperly, recruited her crew within our limits; and every individual concerned in that transaction will be punished, if prosecuted. But all the world knows that the arbitrary exertion of power is unknown to the genius of our constitution, and all that any state can expect of the United States is, that adequate laws should be passed to punish and prevent the commission of such acts. When acts are done in evasion of these laws, unless the government can be charged with winking at those evasions, it is not liable to indemnify Spain for such captures; and our courts of justice cannot, on that ground, violate the obligation of neutrality by seizing and restoring prizes that have been made by either party.